FIRST STATE BANK OF HILGER, RESPONDENT, *v.* LANG, APPELLANT.

(No. 3,922.)

(Submitted June 18, 1918. Decided July 9, 1918.)

[174 Pac. 597.]

*Negotiable Instruments—Accommodation Makers—Liability— Banks and Banking—Cashier — Ostensible Authority—Releasing Security—Directors—Contracts—Ratification—Laches —Directing Verdict.*

Negotiable Instruments—Accommodation Maker—Liability.

1.   Under the negotiable instruments law (secs. 5844, 5877, Rev. Codes), an accommodation maker of a promissory note is primarily liable, and is not discharged by an extension of time given his comaker; the fact that plaintiff—a holder for value—knew that defendant was an accommodation maker did not change the rule.

[As to rights and liabilities of makers and indorsers of accommodation paper, see note in 31 Am. St. Rep. 745.]

Same—Payable in Money.

2.   A promissory note legally imports a promise to pay in money only.

Same—Renewal—Effect—Banks and Banking.

3.   In the absence of an agreement to the contrary, the effect of the renewal of a promissory note is to extend the time of payment, not to discharge the obligation, the act of the cashier of the payee bank in stamping "paid" upon the old note not changing the rule.

Same—Banks and Banking—Authority of Cashier.

4.   The cashier of a bank, being its agent, cannot accept payment of a note in anything but money, in the absence of special authority to that effect.

Same—Cashier of Bank—Ostensible Authority.

5.   Where the directors of a bank by inattention to their duties permit its cashier to conduct its affairs in a certain manner for a period sufficiently long to establish a settled course of business, his authority to do anything the board of directors might have authorized him to do will be implied in favor of an innocent third party, even though the bank is defrauded by his acts.

Same—Banks—Cashier—Ostensible Authority—Who cannot Assert.

6.   The president of a bank who himself, as one of the board of directors, had carelessly permitted its cashier to conduct its affairs in his own way, was in no position to assert his own misconduct as the basis of ostensible authority in the cashier to release him from liability on a note on which his name appeared as one of the makers.

Same—Banks—Ostensible Authority—How Conferred.

7.   Ostensible authority, within the meaning of section 5432, Revised Codes, in an agent (a bank cashier) to do an otherwise un-

authorized act, is not conferred by an isolated act of carelessness on the part of his principal, but can be derived only from a long course of misconduct indulged in by the latter.

Same—Banks—Releasing Security.

8. Without authority from the board of directors of a bank, neither the president nor its cashier can release one of its debtors from liability on a note, and where such power is asserted, clear and convincing proof is required to show that the board intended to confer it.

Same—Banks—Directors—Dealing With Corporation—Burden of Proof.

9. Whenever it appears that a director has been dealing with his corporation, the burden is on him to show that his dealings have been fair and honest and that it has not suffered from his acts.

Same—Banks—Ratification of Act of Cashier.

10. Under section 5429, Revised Codes, it is essential to the ratification of an unauthorized act of an agent, that the principal had full knowledge of all material facts relative to the transaction at the time of the alleged ratification.

Same—Banks—Ratification of Act of Cashier—Availability of Defense.

11. While knowledge of the affairs of a bank by its directors will be presumed in favor of an innocent third party where ratification of an unauthorized act of its cashier is alleged, no such presumption is indulged in favor of its president, who is also a director and who seeks to profit by such act by way of his release from liability on a promissory note signed by him as an accommodation maker.

Same.

12. Since the effect of an action against the maker of a note on which defendant bank president was jointly liable was to lessen the latter's liability by recovering what could be recovered from his comaker, defendant was not in position to assert that by bringing that action the bank had ratified the unauthorized conduct of its cashier (par. 11, above) and thus discharged him from further liability.

Same—Laches.

13. Where an action on a note is brought within the period of the statute of limitations, the defense of laches has no merit.

Same—Banks — Authority of Cashier — Question of Law — Directing Verdict.

14. Where the evidence touching the actual and ostensible power of a bank cashier to release security was undisputed, the question of his authority in the premises was one of law and the trial court could properly direct a verdict.

*Appeal from District Court, Fergus County; Roy E. Ayers, Judge.*

ACTION by the First State Bank of Hilger against H. H. Lang. Judgment for plaintiff, and from an order denying him a new trial, defendant appeals. Affirmed.

*Messrs. Belden & De Kalb,* for Appellant, submitted a brief and one in reply to that of Respondent; *Mr. H. L. De Kalb* argued the cause orally.

The contentions of appellant are: First. That the note, made the basis of this action, was regularly discharged. Second. That if the note was not regularly discharged in the first instance, the action of the cashier was ratified by long acquiescence and by the bringing of suit on the obligation. Respondent contends that the action of the cashier in stamping the note "paid" and surrendering it was unauthorized in law in that, as a general proposition, an obligation can never be said to be paid until it is surrendered for a sufficient consideration. With this general proposition we agree, but with its application to the facts in this case we cannot concur.

The management and control of the affairs of the bank were turned over or abandoned to Henderson, the cashier, and under such considerations the cashier has all the power of the bank. (1 Morse on Banks & Banking, secs. 165, 343; *Martin* v. *Webb,* 110 U. S. 7, 28 L. Ed. 49, 3 Sup. Ct. Rep. 428; *Merchants' Nat. Bank* v. *National Bank,* 10 Wall. (U. S.) 604, 19 L. Ed. 1008; *Armstrong* v. *Chemical Nat. Bank,* 83 Fed. 556, 27 C. C. A. 601; *L'Herbette* v. *Pittsfield Nat. Bank,* 162 Mass. 137, 44 Am. St. Rep. 354, 38 N. E. 368; *Iowa Nat. Bank* v. *Sherman,* 17 S. D. 396, 106 Am. St. Rep. 778, 97 N. W. 12; *Carpey* v. *Dowdell,* 115 Cal. 677, 683, 47 Pac. 695; *Bank* v. *Shook,* 100 Tenn. 436, 45 S. W. 338; *Indianapolis Rolling Mills Co.* v. *St. Louis etc. Ry. Co.,* 120 U. S. 256, 30 L. Ed. 639, 7 Sup. Ct. Rep. 542; *Washington Sav. Bank* v. *Butchers' etc. Bank,* 107 Mo. 134, 28 Am. St. Rep. 405, 17 S. W. 644.) The above rule is said to obtain even though the action be in direct violation of a by-law which the directors negligently allowed to fall into disuse. (*Cox* v. *Robinson,* 82 Fed. 277, 27 C. C. A. 120.)

Where the principal attempts by suit to enforce the payment of notes received by the agent without authority, he thereby impliedly ratifies such act or contract. (*Dick* v. *Flanagan,* 122 Ind. 277, 7 L. R. A. 590, 23 N. E. 765; *Dickinson* v. *Wright,*

56 Mich. 42, 22 N. W. 312; *Ingraham* v. *Barber,* 72 Ga. 158;
*Beidman* v. *Goodell,* 56 Iowa, 592, 9 N. W. 900; *West Boylston
Mfg. Co.* v. *Searle,* 15 Pick. (Mass.) 225; *Osborn Co.* v. *Jordan,* 52 Neb. 465, 72 N. W. 479; *Corser* v. *Paul,* 41 N. H. 24,
77 Am. Dec. 753; *Chamberlain* v. *Woodward,* 22 Hun (N. Y.),
440; *La Grande Nat. Bank* v. *Blum,* 27 Or. 215, 41 Pac. 659.)

The cashier knew the relation of Lang to Smith on this
paper. He was an accommodation party, hence a surety for
Smith. His knowledge was imputed to the bank. (Michie on
Banks and Banking, sec. 827.) An accommodation maker is
treated as a surety by the California decisions construing section 2831 of the California Civil Code adopted by us as section 5680, Revised Codes. (*Kellogg* v. *Lopez,* 145 Cal. 497, 78
Pac. 1056; *Eppinger* v. *Kendrick,* 114 Cal. 620, 46 Pac. 613.)

*Messrs. Gunn, Rasch & Hall* and *Mr. C. J. Marshall,* for
Respondent, submitted a brief; *Mr. E. M. Hall* argued the cause
orally.

A bank cashier or treasurer, as such, has no power to release
a maker, drawer, indorser or surety of a bill or note. (*State
Bank of Moore* v. *Forsyth,* 41 Mont. 249, 28 L. R. A. (n. s.)
501, and note, 108 Pac. 914; *Bank of Commerce* v. *Hart,*
37 Neb. 197, 40 Am. St. Rep. 479, 20 L. R. A. 780, 55 N. W.
631; *First Nat. Bank* v. *Gunhus,* 133 Iowa, 409, 9 L. R. A.
(n. s.) 471, 110 N. W. 611; *Cochecho Nat. Bank* v. *Haskell,*
51 N. H. 116, 12 Am. Rep. 67; *Dedham Institute* v. *Slack,* 6
Cush. (Mass.) 408; *Hodge* v. *National Bank,* 22 Gratt. (Va.)
51; *Daviss Co. Assn.* v. *Sailor,* 63 Mo. 24.)

The cashier's act was never ratified by the directors of the
bank, the fact that they may have had the means or opportunity to have acquired knowledge of Lang's transactions, not
being sufficient to establish knowledge and ratification of the
cashier's act thereof. (*Sehrt-Patterson Milling Co.* v. *Hughes,*
8 Kan. App. 514, 56 Pac. 143; *First Nat. Bank* v. *Drake,* 29
Kan. 311, 44 Am. Rep. 646; *Pacific Vinegar & Pickle Works*
v. *Smith,* 152 Cal. 507, 93 Pac. 85.) Furthermore, in order to

ratify the act of the cashier, the directors must act as a board in order to bind the bank.   (3 R. C. L., sec. 65.)

The act of Lang in getting off this note was not ratified by the bringing of an action for the purpose of trying to collect from Smith, even if the directors then knew that Lang had signed the first note.   (*Pacific Vinegar & Pickle Works* v. *Smith, supra; Goodyear Dental V. Co.* v. *Caduc,* 144 Mass. 85, 10 N. E. 483; see, also, *Triggs* v. *Jones,* 46 Minn. 277, 48 N. W. 1113; *Sohn* v. *Morton,* 92 Ind. 170; *Brown* v. *Fowler,* 133 Ala. 310, 32 South. 584; *Gardner* v. *Pitcher,* 109 App. Div. 106, 95 N. Y. Supp. 678.)

The Lang note has never been paid.   The taking of a renewal note and returning the old one to the maker does not discharge the old debt and create a new one in the absence of express agreement to that effect, and such agreement must of course be made by one having authority to make it.   (*First Nat. Bank* v. *Cottonwood L. Co.,* 51 Mont. 544; *First Nat. Bank* v. *White,* 60 N. J. Eq. 487, 46 Atl. 1092; *State Bank of Isanti* v. *Mutual Tel. Co.,* 123 Minn. 314, Ann. Cas. 1915A, 1082, 143 N. W. 912; *Fowler* v. *Walch,* 119 App. Div. 547, 104 N. Y. Supp. 54; *First Nat. Bank* v. *Gunhus,* 133 Iowa, 409, 9 L. R. A. (n. s.) 471, 110 N. W. 611; *Bridge* v. *Connecticut Mutual Life Co.,* 167 Cal. 774, 141 Pac. 375.)

Lang and Smith were jointly and severally liable on the note, and even if Lang was an accommodation maker, he was not discharged by any extension of time given to Smith.   (3 R. C. L., sec. 506; *Union Trust Co.* v. *McGinty,* 212 Mass. 467, Ann. Cas. 1913D, 715, 98 N. E. 679; *Bradley Engineering etc. Co.* v. *Heyburn,* 56 Wash. 628, 134 Am. St. Rep. 1127, 106 Pac. 170; *Cellers* v. *Meachem,* 49 Or. 186, 13 Ann. Cas. 997, 10 L. R. A. (n. s.) 133, 89 Pac. 426; *Wolstenholme* v. *Smith,* 34 Utah, 300, 97 Pac. 329; *Rouse* v. *Booten,* 140 N. C. 557, 111 Am. St. Rep. 875, 6 Ann. Cas. 280, 53 S. E. 430; *Vanderford* v. *Farmers' & M. Nat. Bank,* 105 Md. 164, 10 L. R. A. (n. s.) 129, 66 Atl. 47.)   Mere failure to promptly pursue Smith and to try and realize on the collateral held did not discharge

Lang. (3 R. C. L., sec. 503; note to *Rogers* v. *Detroit Savings Bank,* 18 L. R. A. (n. s.) 531, 539; *Gray* v. *Farmers' Nat. Bank,* 81 Md. 631, 32 Atl. 518; *Carpenter* v. *McLaughlin,* 12 R. I. 270, 34 Am. Rep. 638; *Wolstenholme* v. *Smith,* 34 Utah, 300, 97 Pac. 329.)

Lang could not protect his private interests to the detriment of those of the bank. (*Gallery* v. *National Exchange Bank,* 41 Mich. 169, 32 Am. Rep. 149, 2 N. W. 193; *Bank of Isanti* v. *Mutual Tel. Co., Fowler* v. *Walch, First Nat. Bank* v. *Gunhus, supra; Wallace* v. *Oceanic Packing Co.,* 25 Wash. 143, 64 Pac. 938; *Finley* v. *Cowles,* 93 Iowa, 389, 61 N. W. 998; *Commercial National Bank* v. *Chatfield,* 121 Mich. 641, 80 N. W. 712; *Lawrence* v. *Stearns,* 79 Fed. 878.)

MR. JUSTICE HOLLOWAY delivered the opinion of the court.

In March, 1908, Chas. W. Smith and H. H. Lang executed and delivered to the First State Bank of Kendall their promissory note for $1,900, and, as additional security for the loan, Smith delivered to the bank 1,000 shares of the capital stock of the North Moccasin Mining Company. Although the note was not due until January, 1909, as early as April, 1908—the month following its execution—Lang importuned Smith to make payment on it, which Smith declined to do, and the like requests were repeated by Lang thereafter but unsuccessfully. On November 8, 1908, Smith executed and delivered to the bank a new note for $2,695, due in one year, in renewal of the Smith-Lang note and a balance due on another note of Smith's, and the original note was stamped "Paid" and delivered to Smith. This renewal note was not signed by Lang but the collateral which secured the two notes was left with the bank as the only security for the new note. On April 2, 1909, this renewal note was taken up and a third note for $3,612.87, signed by Smith and wife, was given in renewal of that note and for other advancements, and the second note was stamped "Paid" and delivered to Smith. In addition to the collateral which secured

the second note, Smith and wife executed and delivered to the bank a mortgage upon some real property in Kendall. On March 12, 1912, suit was instituted to enforce collection of this third note, and thereafter judgment was recovered and execution issued, but nothing was collected.

From the organization of the bank until November, 1912, Henderson was cashier and Lang was president of the bank, and each of them was a director. Plaintiff is the successor of the First State Bank of Kendall. This action was commenced against Lang to enforce payment of the Smith-Lang note for $1,900 and accumulated interest. The defendant pleaded: (1) That he signed the note as accommodation for Smith, and that the bank extended the time of payment without his knowledge or consent; (2) that the bank was guilty of laches in prosecuting its claim against Smith; and (3) that the note was fully paid and discharged. Upon the trial and at the close of the testimony the court directed a verdict for the plaintiff, and defendant has appealed from an order denying him a new trial. There is not any conflict in the evidence except as to matters to which reference will be made hereafter.

Lang was general manager of the North Moccasin Mining Company, and owned considerable of its stock. The expenses of the company far exceeded its income, but notwithstanding this fact the stock had a market value of from $1.90 to $2 per share. Lang sold to Smith the 1,000 shares heretofore mentioned at $1.90 per share. The money with which to pay for the stock was borrowed from the bank and the Smith-Lang note executed and delivered, the money received and immediately passed to Lang's credit, and the certificate of stock delivered to the bank as collateral. On November 1, 1908, the mining company defaulted in the payment of interest on its bonded indebtedness. In April, 1909, mining operations ceased. In September, 1909, a suit to foreclose was brought and prosecuted to decree and sale, and the stock became worthless.

Prior to November, 1912, the board of directors of the bank in disregard of its by-laws held no meetings except to elect officers, made no examinations of the bank's affairs, took no part in making or approving loans, but permitted Henderson to conduct the bank's business. The directors, other than Henderson and Lang, knew nothing of the Smith-Lang loan or of the renewals. In November, 1912, at a meeting of the board at which neither Henderson nor Lang was present, certain of the bank's loans, including the note for $3,612.87 signed by Smith and wife, were approved. In January, 1914, the board discovered that Lang had signed the original note for $1,900, and a demand was made upon him to pay it, and upon his refusal this action was brought.

1. Appellant contends that, having signed the Smith-Lang note as an accommodation party, he was liable only as a surety, [1] and was discharged by the extension of time granted to Smith without his knowledge or consent. With this we do not agree. A surety is only liable secondarily. The note reads:

"Jan. 10th, 1909, after date we or either of us promise to pay to the order of First State Bank of Kendall, nineteen hundred and no-100 dollars for value received," *etc.*, and was signed,

"Chas. W. Smith,<br>
" H. H. Lang."

Section 5844, Revised Codes, provides: "The person 'primarily' liable on an instrument is the person who by the terms of the instrument is absolutely required to pay the same. All other parties are 'secondarily' liable." By virtue of this statute Lang was primarily liable, and his primary liability was not affected by the fact that he signed the note for the accommodation of Smith, and that this fact was known to the bank, a holder for value. Section 5877, Revised Codes, defines an accommodation party, and then proceeds: "Such a person is liable on the instrument to a holder for value, notwithstanding such holder at the time of taking the instrument knew him to

be only an accommodation party." The foregoing statutory provisions are portions of the Uniform Negotiable Instruments Act. They have been construed frequently, and the consensus of opinion is stated in 3 R. C. L., p. 1276, as follows: "Under the negotiable instruments law it may be regarded as well settled that the accommodation maker or acceptor is primarily liable, and is not discharged by any extension of time given to the indorser, drawer, or comaker, for whose benefit he became a party to the instrument, without regard to whether the party suing on the instrument is a party thereto as a payee, and had knowledge of the relation subsisting between the accommodation maker and the principal debtor."

2. A promissory note legally imports a promise to pay in [2, 3] money and nothing else. Unless there was an agreement between the bank and Smith that the renewal note of November 8, 1908, was given by Smith and accepted by the bank in payment and discharge of the debt represented by the Smith-Lang note, the effect of the renewal was merely to extend the time of payment, and did not discharge the obligation. (*First Nat. Bank* v. *Cottonwood Land Co.*, 51 Mont. 544, 154 Pac. 582.) The fact that the cashier stamped "Paid" upon the old note, and delivered it to Smith, did not operate to change the rule. (*Bridge* v. *Connecticut Mut. Life Ins. Co.*, 167 Cal. 774, 141 Pac. 375; *Scott* v. *Gilkey*, 153 Ill. 168, 39 N. E. 265; *First Nat. Bank* v. *White*, 60 N. J. Eq. 487, 46 Atl. 1092; *Lowther* v. *Lowther-Kaufmann Oil & Coal Co.*, 75 W. Va. 171, 83 S. E. 49; 8 C. J. 572; 1 Michie on Banks and Banking, p. 739.)

3. If the evidence is open to the inference that it was the [4] intention of the cashier to accept the renewal note in payment, and to discharge Lang, the inquiry arises, Had he any such authority?

The cashier of a bank is its agent, and his conduct is governed by the general rule of agency. (1 Michie on Banks and Banking, p. 712.) It is elementary that, in the absence of special authority, an agent cannot accept payment in anything but

money.  (*United States Nat. Bank* v.  *Shupak,* 54 Mont. 542,
172 Pac. 324.)   An agent has such authority as the principal
actually or ostensibly confers upon him.   (Sec. 5430, Rev.
Codes.)   It is not contended that by virtue of his office the
cashier had authority to release Lang; neither is it urged that
he had received express authority from the board of directors
[5]  to do so; but it is insisted that, by turning over to the
cashier the entire management of the bank, the board impliedly
conferred upon him this extraordinary power, and 1 Morse on
Banks and Banking, par. 165, is cited as authority to support
this contention.   But counsel misconceive the import of the
author's language, for immediately following the rule it is
said: ''This doctrine is certainly a liberal one towards *innocent
outsiders.*''   The same general rule is adverted to by Michie
(1 Michie on Banks and Banking, p. 695), and concerning it
that author says: ''Nor is there any incongruity or departure
from general principles in this, since it is merely the applica-
tion of the very general principle that as regards *third persons*
the officers and agents must be deemed clothed with whatever
powers the bank has held them out as possessing in the same
degree as if the authority had been expressly granted.''   In
other words, the rule embodies the general principle of ostensi-
ble authority, and those terms are defined in section 5432, Re-
vised Codes, as follows: ''Ostensible authority is such as a
principal, intentionally or by want of ordinary care, causes
or allows *a third person* to believe the agent to possess.''

If the directors in disregard of their duties permit the cashier
to conduct the affairs of the bank for a period sufficiently long
to establish a settled course of business, his authority to do
anything which the board might have authorized him to do
[6, 7]  in the first instance will be implied in favor of an inno-
cent third party, even though the bank is defrauded by his
acts.   (1 Michie on Banks and Banking, p. 714.)   But the
doctrine of ostensible authority cannot be extended in favor
of one who is familiar with the facts and whose dereliction is
relied upon to give color to the agent's unauthorized acts.

Neither does it aid appellant to say that, being interested, he could not have participated as a member of the board in passing upon the application of Smith for the renewal on November 8, 1908. An isolated act of the board did not give the cashier ostensible authority. If he possessed any such power he derived it from the long course of misconduct on the part of the board in which Lang participated.

In effect, appellant's position is this: For three years prior to November 8, 1908, the directors, including the cashier and myself, flagrantly disregarded the duties imposed upon us by law, and permitted the cashier to run the bank without let or hindrance. We held him out to the world as having authority to do anything and all things which the board of directors might have authorized him to do; and since the board might have authorized him to release security, it should be presumed from my misconduct and the misconduct of my associates that he had authority to release me from liability on the Smith-Lang note. Such a contention offends against every principle of law and morals. (*Campbell, Receiver,* v. *Watson,* 62 N. J. Eq. 396, [8] 50 Atl. 120.) Neither the president, the cashier, nor both of them, could release a debtor of the bank from his liability, without authority from the board of directors (1 Michie on Banks and Banking, p. 706), and the president will not be heard to say that he was released of his liability, in the absence of clear and convincing proof that the board intended to clothe [9] the cashier with that extraordinary power. Whenever it appears that a director has been dealing with his corporation, the burden is at once upon him to show that his dealings have been fair and honest; in other words, that the corporation has not suffered as the result of his acts. (*Hanson Sheep Co.* v. *Farmers' etc. Bank,* 53 Mont. 324, 163 Pac. 1151.)

If appellant should prevail in this instance, the result would be that the bank of which he was president and a director, would lose $1,900 and the interest thereon as the result of his transaction with it. Whatever ostensible authority the cashier had in dealing with strangers, he had only such authority in

dealing with a director as was conferred upon him by virtue of his office or by express grant from the board.

4. But it is insisted that the board ratified the act of the [10] cashier in releasing Lang: (a) By bringing an action to enforce collection of the renewal note; and (b) by approving the renewal loan.

The suit upon the renewal note was commenced on March 12, 1912, while Henderson was still cashier and Lang was president. The action of the board in ratifying the Smith loan for $3,612.87 was taken in November, 1912. On neither date did any member of the board, other than Henderson and Lang, know that Lang had ever been liable for the payment of any portion of that debt. By the terms of section 5429, Revised Codes, it is essential, in order that the ratification of an unauthorized act of an agent be valid, that the principal have full knowledge of all material facts relative to the transaction, at the time of the ratification. (31 Cyc. 1253.) While knowledge [11] of the affairs of the bank by the directors will be presumed in favor of an innocent third party, no such presumption is indulged in favor of the president, who is himself a director. (3 R. C. L., p. 456.) In the absence of any evidence that the members of the board had knowledge of Lang's liability, they cannot be held to have ratified the act of the cashier in attempt- [12] ing to release him. But aside from every other consideration, Lang cannot complain that the bank made an effort to collect this debt from Smith and thereby lessen his liability, and this is the legal effect of bringing the action upon the renewal note. (*Goodyear D. V. Co.* v. *Caduc,* 144 Mass. 85, 10 N. E. 483.)

5. There is no merit in the defense of laches. Appellant [13] was primarily liable on the Smith-Lang note, and this action was commenced within the period of the statute of limitations. (*Bank* v. *Shupak,* above.)

6. Finally, it is contended that the trial court erred in direct- [14] ing a verdict for plaintiff because there were material issues of fact for determination by the jury, but with this we

do not agree.    Whether Henderson had authority to release Lang was a question of law.    The evidence touching his actual and ostensible powers is undisputed.    Henderson testified that he took the renewal note without Lang's signature, at Lang's suggestion and request.    This Lang denies, but, if Henderson had no authority to release him, it is immaterial upon whose suggestion he acted.

The determination that Lang, was primarily liable upon the Smith-Lang note disposes of the other contentions urged by appellant.

The order is affirmed.

*Affirmed.*

MR. CHIEF JUSTICE BRANTLY and MR. JUSTICE SANNER concur.

