## FIRST STATE BANK & TRUST CO. OF MINERAL WELLS v. DAVIDSON et al. (No. 7120.)*

(Court of Civil Appeals of Texas. San Antonio. March 12, 1924. Rehearing Denied April 9, 1924.)

1. **Trial ⊜350(4)—Failure to submit issue whether directors intended to release president from partnership liabilities held erroneous.**

In a bank's suit on renewal notes given by a partnership, there being testimony that the original notes were accepted solely upon representation of the bank's president. who was also a director, that he was a member of the partnership, held, that the court erred in refusing to submit a requested issue whether, at the time the renewal notes were accepted, the directors intended to release the president, who was a member of the partnership at the time of the execution of the original notes but not at the time of renewal, from the indebtedness of the partnership and to accept the renewal notes of the remaining member in their place.

2. **Banks and banking ⊜114—Full knowledge of facts necessary to ratification by bank of act of president in releasing himself from obligation to bank.**

Where a bank took notes of a firm of which the bank's president was a member, and, after the president and another member had retired from the firm, its debts being assumed by the remaining member, the bank accepted renewal notes from the latter, such renewal could only have the effect of releasing the president and the other member when treated as a ratification of what the president did in dealing with the debts of the firm, and a full knowledge of such dissolution of the firm and its incidents was necessary to such ratification.

3. **Banks and banking ⊜116(2)—Knowledge of bank president held not notice to bank of his retirement from firm, debtor of bank.**

Upon the question whether a bank, taking notes of a firm of which its president was a member, had knowledge, at the time of taking renewal notes, that the president had retired from the firm and that its debts had been assumed by the remaining member, the knowledge of the president was not notice to the bank.

4. **Bills and notes ⊜430—Effect of renewal note as release of original joint obligor not signing, stated.**

In the absence of an express agreement, or without the acceptance of a substituted note with full knowledge of all the facts, the acceptance of a renewal note of one or more joint obligors bound for a pre-existing debt is neither a payment of nor a release of the other joint obligors who did not sign the renewal note.

5. **Banks and banking ⊜55(5)—Burden on officers to show that dealings with bank have been fair and honest.**

Where a president and director of a bank claimed to have been released from liability on a note of a firm to the bank by his retirement from the firm before renewal of note, the burden was on him to show that his dealings were open, fair, and honest, and that the corporation had not suffered any by his acts.

6. **Partnership ⊜236—Taking of renewal note from new firm does not discharge retiring partners from liability unless so agreed.**

Knowledge of the dissolution of a partnership and the continuance of its business by the remaining partners and the taking of a renewal note from the new firm does not discharge the retiring partners from liability, unless agreed that it shall have that effect.

7. **Novation ⊜5—Agreement necessary to release of old debtor by substitution of new.**

The taking by a creditor of a note from one who has assumed the debts is not a novation releasing the old debtor without an agreement to that effect.

8. **Banks and banking ⊜116(5)—Mere knowledge of one or two directors not disclosed held not notice to directorate.**

What one or two directors of a bank knows and does not disclose to the other directors acting in their official capacity cannot be imputed knowledge to them for the purpose of releasing a solvent debtor and an officer and director in the bank from his obligation to it and substituting an insolvent person as the bank's debtor.

Appeal from District Court, Palo Pinto County; J. B. Keith, Judge.

Action by the First State Bank & Trust Company of Mineral Wells against W. A. Davidson and others. Judgment for defendants and plaintiff appeals. Reversed and remanded.

Gross & Zivley, of Mineral Wells, and I. W. Stephens, of Fort Worth, for appellant.

Goree, Odell & Allen, of Fort Worth, and Penix, Miller & Perkins, Smith & Smith, and Moyers & Creighton, all of Mineral Wells, for appellees.

COBBS, J. This suit was instituted by appellant to recover from appellees on three promissory notes payable to appellant. The first note was for $11,000, signed by Davidson Motor Company; the second for $2,534.85; and the third for $3,683.75. The last two

---

⊜For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

*Writ of error granted June 6, 1924.

notes were signed Davidson Motor Company and J. F. Cross.

At the time the $11,000 note was executed, the Davidson Motor Company was a partnership composed of W. A. Davidson, H. N. Frost, and J. C. Llewellyn. The partnership was dissolved on March 30, 1920, and W. A. Davidson assumed the indebtedness of the Davidson Motor Company; and in April, 1920, J. F. Cross was taken in the firm.

The appellant bank accepted in renewal of the $11,000 note, upon which credits had been paid, a note for $7,931, signed by W. A. Davidson; and on March 24, 1921, a second renewal note was accepted by the bank for $7,238.39, also signed by W. A. Davidson.

On May 1, 1920, at the time of the first renewal note, H. N. Frost was the president of the bank, but he resigned on June 1, 1920. When the second note was renewed, on March 24, 1921, H. N. Frost having retired as president, W. I. Smith, its then president, was in active charge of the bank's affairs, and acted for the bank in the transactions concerning the renewals.

There was testimony showing that the directors of the bank expressly refused to extend any credit to W. A. Davidson, but it was extended to him and his company upon the representations of Frost that he was a member of the firm; and on March 30, 1920, the date of the dissolution of that firm, no official of the bank, except Frost, knew that it had been dissolved. There is testimony that the directors were unanimous in the position that W. A. Davidson had no credit at the bank apart from the credit that Frost and Llewellyn gave to them by virtue of their partnership with Davidson.

When the Davidson partnership was dissolved, both Frost and Llewellyn were liable for the indebtedness · evidenced by the two notes, and were not released by the dissolution of the partnership. Frost being the president and a director of the bank (well understood by Llewellyn) could not bind the bank by a transaction so beneficial to himself and Llewellyn and so disastrous to the bank. It is urged by appellant that Frost could not release himself from the liability of the partnership by its dissolution, nor by his withdrawing therefrom, nor by any other act of his to the detriment of the bank. Appellant says:

"He stamped said $11,000 note, 'Paid,' and withdrew it from the files of the bank, having, under date of April 27, 1920, entered thereon a credit of $2,066.25, by reason of the Armstrong note for $2,280, dated April 26, 1920, which he had obtained from Davidson (the balance of said $2,280 note having been credited on the $9,600 note), and placed in its stead the W. A. Davidson note for $7,931, dated May 1, 1920, and the said Armstrong note for $2,280, both of which notes were worthless."

The case was tried with a jury upon special issues, and upon their answers thereto the judgment was entered in favor of appellees.

The special issues submitted by the court to the jury, together with their answers, are copied herein:

"Special issue No. 1: Did W. I. Smith, or either of the directors of the plaintiff bank, on or about the 30th day of March, 1920, know that H. N. Frost and J. C. Llewellyn were withdrawing as partners from the Davidson Motor Company and that the Davidson Motor Company partnership was dissolved, H. N. Frost being excepted as an officer or director of the bank in making this answer? Answer yes or no, just as you find." The jury answered: "No."

"Special issue No. 2: Did either of the directors of plaintiff bank, H. N. Frost being excepted, on or before May 4, 1920, know that the Davidson Motor Company, a partnership, had been theretofore dissolved and that H. N. Frost and J. C. Llewellyn had retired from same and was not connected therewith as partners? Answer yes or no, just as you find." The jury answered: "Yes."

"Special issue No. 3: Did the directors of plaintiff bank, or either of them, except H. N. Frost, on or before April 5, 1921, know that the Davidson Motor Company, a copartnership, had been theretofore dissolved and that H. N. Frost and J. C. Llewellyn were not connected therewith as partners? Answer yes or no, just as you find." The jury answered: "Yes."

"Special issue No. 4: Did the board of directors of plaintiff bank, at any time after the 30th day of March, 1920, accept the individual note of W. A. Davidson for the sum of $7,931 and the B. C. Armstrong note for $2,280, or the renewals of either or both of said notes and the securities belonging to either of said notes, in lieu of and in place of the balance due on the $11,000 note in evidence? Answer yes or no, just as you find the facts to be." The jury answered: "Yes."

The disposition of this case will be largely controlled by the fourth special issue given to the jury, and the refusal to give No. 4, requested by appellant. If the board of directors, with full knowledge of all the facts, intended to or did expressly release Frost and Llewellyn, they being liable as partners at the time of the purported release, the inquiry would go no further. But this cannot be determined as a matter of law upon the legal effect of, or by construction of, the charge, in view of all the testimony in this case. The jury may very well have found that the notes of Davidson and Armstrong were accepted in lieu of the balance due on the $11,000, there being nothing submitted to them at the time in connection therewith to show they were releasing any other sureties or obligors.

[1] The very live issue of the intent to release Frost and Llewellyn, who being, as claimed, liable on the W. A. Davidson, or Davidson Motor Company, obligation, was not submitted to the jury; hence appellant prepared and requested the submission of this issue to the jury:

"Did the board of directors of plaintiff bank, at the regular meeting thereof on May 4, 1920, intend to release H. N. Frost and J. C. Llewellyn from their liability on the indebtness of the Davidson Motor Company due to plaintiff, and to accept the individual note of W. A. Davidson for $7,931 and the B. C. Armstrong note for $2,280 and the chattel mortgage of even date with said Davidson note and made by W. A. Davidson, in the place and in lieu of H. N. Frost and J. C. Llewellyn? Answer yes or no" —the court's notation thereon being, "Refused because too restrictive generally," to which appellant duly excepted.

There is nothing anywhere in the court's special issues that remotely called to the jury's attention the prior liability of Frost to the bank on these obligations upon which they were released by these substituted notes. Nor is there any issue submitted by the court to the jury to determine whether or not the directors were releasing, or intending to release, Frost and Llewellyn from their obligation to the bank on the Davidson Motor Company's partnership obligation. That they were released by express agreement or by implication is not apparent. It was a material issue of fact, not of law, which only could be determined by the intention of the directors of the bank, and the court should have submitted the issue raised by the pleading and the evidence surrounding the transaction.

[2] The action of the board of directors at its meeting was in reference purely to the acceptance and renewal of the notes mentioned, and could only have the effect of releasing Frost and Llewellyn, when treated as acts of ratification of what Frost as president and director did in dealing with the debts of the Davidson Motor Company. But in order to release Frost and Llewellyn from their liability to the bank, all the facts should have been made known to the directors at the time. There is no such thing as a ratification of an unknown thing or act. Ratification presupposes a full knowledge of all the acts and transactions that went before. In other words, here, informed that the partnership was dissolved and that Frost and Llewellyn were no longer to be bound and were to be released from those obligations already incurred by them.

[3] Knowledge on the part of Frost of the dissolution of the partnership of which he was a member, but concealed by him from the bank, must be most strongly construed against him. If he had notified his directors, it would no doubt have caused them to act differently; but, at any rate, this knowledge undisclosed cannot be used to the detriment of the bank.

[4] In the absence of an express agreement with the directors of the bank, or without the acceptance of substituted notes, with full knowledge of all the facts, the acceptance of such note of one or more joint obligors bound for a pre-existing debt is neither a payment of nor a release of other joint obligors who did not sign the note.

There is no express or direct testimony showing that the bank with full knowledge of all the facts released Frost and Llewellyn.

Here is a case in which a president and director of a bank is attempting to be released from their suretyship, if not primary obligation, by substituting other obligations in lieu of them, because of the action of the directors in taking other notes without showing the parties solvent or possessed of property of value beneficial to the bank, made on full and fair disclosure of all the facts material to the transaction. Such a transaction cannot be upheld. Tenison v. Patton, 95 Tex. 284, 67 S. W. 92; Scott v. Farmers' & Merchants' Bank, 97 Tex. 31, 75 S. W. 7, 104 Am. St. Rep. 835; Harwood v. Fort Worth National Bank (Tex. Civ. App.) 205 S. W. 484; Fowler v. Walch, 119 App. Div. 542, 104 N. Y. Supp. 54; First National Bank v. Gunhus (Iowa) 110 N. W. 611, 9 L. R. A. (N. S.) 471.

[5] The burden is on the president or director of a bank to show his dealings have been open, fair, and honest, and that the corporation has not suffered any by his acts. Bank v. Lang, 55 Mont. 146, 174 Pac. 597, 9 A. L. R. 1139; Bank v. Simmons (Mo. App.) 204 S. W. 837.

The directors of the bank, other than Frost, in accepting the substituted notes, or, perhaps, it may be said, in acquiescing in what Frost did, in dealing with the indebtedness of Davidson Motor Company to the bank, did not know of the private agreement between Llewellyn and Davidson that Davidson alone upon the dissolution of the firm was to remain bound and Frost and Llewellyn released. If they had known this fact, they doubtless would not have released Frost and Llewellyn, for they had previously refused to extend credit on the Davidson note, and only did so when Frost advised them he stood behind it. There has been no apparent, active, real, or intended approval going to show any release of the only solvent persons liable thereon.

Other than Frost himself, who only knew and did not disclose the facts, it may be said the directors made the substitution in total ignorance of all the facts. Frost had told W. I. Smith, who succeeded him as president of the bank. It was the duty of Frost to have put each and every member of his board in possession of a situation so delicate in his interest and against the interest of the bank. Frost knew they would extend no credit to Davidson, and well knew the bank looked to him. The directors of the bank, with this knowledge before them, to have released without consideration Frost and Llewellyn would have been in manifest disregard of the interest they were put there to protect, and perhaps beyond the power of the board of directors to do. Thompson on Corporations, vol. 4, § 4750.

[6, 7] Even knowledge of the dissolution of the partnership and the continuance of its business by the remaining partners, and the taking of a renewal note from the new firm, does not discharge the retiring partners from liability, unless agreed that it shall have that effect. Watson v. Bank (Tex. Com. App.) 237 S. W. 1106; White v. Boone, 71 Tex. 712, 12 S. W. 51. And the taking by the creditor a note from one who has assumed the debts is not a novation releasing the old debtor, without an agreement to that effect. Wilson v. J. W. Crowdus Drug Co. (Tex. Civ. App.) 190 S. W. 194; Gimbell & Sons v. King et al. (Tex. Civ. App.) 95 S. W. 7; Shapleigh Hardware Co. v. Wells, 90 Tex. 110, 37 S. W. 411, 59 Am. St. Rep. 783; Pierce Fordyce Oil Assn. v. Woods et al. (Tex. Civ. App.) 180 S. W. 1181; Darby v. Bank (Tex. Civ. App.) 253 S. W. 341.

We cannot understand the notation of the trial court on special issue No. 4, requested by appellant, refused "because too restrictive." Generally, in charges complaints are more often made because too general; but here is a charge directly to the point, quite full, and submitting the real question as to whether the directors did "intend to release H. N. Frost and J. C. Llewellyn from their liability of the indebtedness of the Davidson Motor Company to plaintiff, and to accept the individual note of W. A. Davidson," etc. It finds merit in the fact that it does restrict the jury to the question. Appellant was entitled to have a jury say whether, with all the facts before them, the directors intended to release the appellees Frost and Llewellyn, and look to Davidson to whom credit had been refused, in lieu of Frost and Llewellyn, to whom the credit was given.

As said in Gimbell & Sons v. King et al. (Tex. Civ. App.) 95 S. W. 7, in an opinion written by the present Chief Justice of this court, substantially: It is an essential part of the law of novation that in substituting a new debtor it must clearly appear that it was the intention of the creditor to discharge the old debtor.

[8] That Frost, the debtor, knew of the dissolution of the partnership that undertook to release him from his firm's obligations, cannot be used in his favor here for any purpose whatever. Nor the fact that some other director knew does not affect the situation. What one or two directors knew and did not disclose to the other directors acting in their official capacity cannot be imputed knowledge to them. It takes more than that to release a solvent debtor and an officer and director in the bank from his obligation to the bank, and substitute a lieu of such an insolvent person.

It may be said that H. N. Frost and W. I. Smith knew of the dissolution of the firm, but even admitting, as claimed by appellees, that knowledge was imputed to the other directors, still there is nothing to show they acted upon that knowledge. They were not permitted to do so by any charge of the court. The question of the intention of the directors was not even remotely submitted to the jury. We have read the cases of Bank of U. S. v. Davis, 2 Hill (N. Y.) 452, Railway Co. v. Woolley, 75 Ky. (12 Bush) 451, and Union Bank v. Campbell, 4 Humph. (23 Tenn.) 394, and all the others appellees cite as in point, and as supporting their contention. We see nothing in those cases in point and applicable to the precise question in this case, as in support of appellees' contention.

The question must be determined here by the facts; that is to say, did the board of directors by their action as such intend that the solvent debtors, Frost and Llewellyn, be released? We cannot determine that question in the absence of a finding that they did or did not.

Having reached the conclusion that the necessary and correct issues arising under the facts in this case were not submitted, it was error to refuse to give the requested charge by appellant to correct the error.

For the reasons given the judgment of the trial court must be reversed, and the cause remanded for another trial.