### FIRST NAT. BANK OF LEVELLAND v. JAGGERS.

### No. 4466.

Court of Civil Appeals of Texas. Amarillo.
Sept. 30, 1935.

Rehearing Denied Oct. 28, 1935.

Rob't A. Sowder, of Lubbock, for appellant.

Vickers, Campbell & Evans, of Lubbock, for appellee.

MARTIN, Justice.

Appellee procured a judgment against appellant for $200 and interest in the county court of Cochran county. We copy an excerpt from appellee's brief, which succinctly states the nature of the case before us: " * * * that the plaintiff Jaggers and the defendant Bank had a contract or agreement whereby Jaggers was to sell work stock and farming implements to the Bank or its customers who were in the market for work stock or farming implements, and in event of a purchase and sale the Bank would pay Jaggers the value of such property sold and delivered. That in pursuance of said agreement the Bank had one J. J. May, its customer, to inspect the stock and farming implements, and said May after inspection and negotiations with Jaggers agreed to purchase certain work stock and farming implements, and that such property was of the value of $200.-00. That certain of the work stock and farming implements (fully described in the pleadings) were delivered said May by Jaggers. Thereupon said May advised the Bank of his purchase of such stock and of the value thereof, and said Bank took his note for such value of $200.00, with interest thereon, and secured the payment of said note with a chattel mortgage on such work stock and farming implements, and in addition thereto on other property consisting of a brood sow and eighty acres of cotton and feed. However, said Bank did not pay Jaggers the $200.00 as was agreed, but apparently gave him a book credit on his indebtedness to the Bank, and

later repudiated said credit and compelled Jaggers to pay his indebtedness in full to the Bank and never allowed him any consideration for his sale and delivery of his property to May. For the breach of such contract he sued the Bank for the value of his said property of $200.00, with legal interest thereon from the time of its delivery."

Appellant in due time filed its plea of privilege to be sued in Hockley county, admittedly its residence. To this a controverting plea was made and filed, alleging in substance and in part: " * * * that its promises and representations to pay him and its agreement to do so were made in Cochran County, Texas, and that a part of his cause of action in any event arose in Cochran County, Texas, which latter county has venue and jurisdiction to determine this cause on its merits." It also was alleged and proven that appellant was a banking corporation, doing business at Levelland in Hockley county. Upon a full hearing the trial court overruled appellant's plea of privilege, and rendered judgment as above stated.

We have reached the conclusion that appellee failed to prove that appellant made any contract with him in Cochran county, so as to give venue under article 1995, subd. 23, R. S. 1925, of his cause of action, as contended for by him below and here.

■ A corporation can only act through its agents, and the burden of proof was on appellee to show venue in Cochran county, which included proof of authority of its alleged agent to make the contract sued on. Ætna Life Ins. Co. v. McIver (Tex. Civ. App.) 65 S.W.(2d) 817, 819. We quote from the case just cited: "It devolved upon appellee to prove affirmatively facts showing that he had a bona fide cause of action and that suit thereon could be properly maintained in Madison county under one or more of the provisions of article 1995 of our Revised Statutes, relating to venue. San Angelo Progressive Local Mutual Aid Ass'n v. Keel (Tex. Civ. App.) 40 S.W.(2d) 858, pars. 1 and 2; Conner v. Manning (Tex. Civ. App.) 54 S.W.(2d) 249, 251, par. 3, and authorities there cited; Eckert-Burton Const. Co. v. Board of School Trustees (Tex. Civ. App.) 51 S.W.(2d) 642, 643, par. 2. The whole of the testimony on this issue has been hereinbefore set out. The purported contract of insurance sued on by appellee was based on a transaction between him and one Keller. It devolved upon appellee to show prima facie at least the validity of such contract. Such showing required affirmative testimony that Keller was appellant's agent and that he had authority for and in behalf of appellant to then and there consummate the contract of insurance claimed and relied upon by appellee. Brown v. Cox (Tex. Civ. App.) 53 S.W.(2d) 848, 850, par. 7; C. & S. Sporting Goods Co: v. Brady Independent School Dist. (Tex. Civ. App.) 54 S.W.(2d) 1033, 1034, par. 4, and authorities there cited; Conner v. Manning, supra, 54 S.W.(2d) 249, page 250, par. 2; Pounds v. Marler (Tex. Civ. App.) 50 S.W.(2d) 382, 384, top first column; Sims v. Callihan (Tex. Civ. App.) 39 S.W.(2d) 153, 158, par. 8; Id. (Tex. Civ. App.) 40 S.W.(2d) 869."

■ Appellee cites, among other cases, Western Wool Comm. Co. v. Hart (Tex. Sup.) 20 S. W. 131, and Stone Fort Nat. Bank v. Forbess (Tex. Civ. App.) 41 S.W.(2d) 695. A mandamus was issued against this court, requiring it to certify the question of venue, in the last case cited. See Stone Fort Nat. Bank v. Hall, 122 Tex. 526, 62 S.W.(2d) 86. In the first case cited the question of agency was not involved, and conceding its correctness and application here without deciding either, it does not rule this case. Here there is not evidence of any probative force in our opinion that any duly authorized agent of the appellant ever entered into the contract sued on in Cochran county. Appellee refers us to pages 5, 6, 38, 39 of the statement of facts for the evidence of his allegations. We here copy literally the material portions of the cited pages:

"Q. All right, did the Bank, or its representatives, advise you of whether it had any customers, or clients, on hand that wanted to buy stock, farm stock and farm implements, or anything of that kind? A. Yes, sir. I went to the State Bank before I ever went to the other, and I talked to Mr. Green and told him what I had and if he had any customers to send them out there.

"Q. What did he reply? A. That is what he proposed to do.

"Q. Now, after that conversation with him, did Mr. Green come over here in Cochran County and look at your property? A. Yes, sir, he came over several times, him and Mr. Mann both.

814

"Q. Before the May transaction occurred? A. Yes, sir.

"Q. Did you have an agreement with them about the property, and did you show them the property? A. Yes, sir.

"Q. This particular property that you sold to May? A. I don't think he ever seen them. * * *

"Q. Now, Mr. Jaggers, Mr. May came out to your place and looked at this property? A. Yes, sir.

"Q. Did he scan over all this property and look at it? A. Yes, sir. Mr. May came out—

"Q. Just a minute. Was he alone at the time? A. No, he had—I don't know who all was with him, there must have been nearly a truck load of them.

"Q. Was Mr. Green or Mr. Mann with him? A. No, sir.

"Q. They were not? A. No, sir.

"Q. Did Mr. May inform you what he was out there for? A. I never met the man until he came out there and told me who he was.

"Q. Who was it he said sent him there? A. The Bank.

"Q. Which Bank? A. State Bank and First National both. He said the President sent him out there to look at the stuff. * * *

"Q. What was that conversation? A. I don't know whether I could give it verbatim or not.

"Q. Just give the substance of it? A. The substance of it, to the best of my recollection, was that Mr. Green told Mr. Jaggers that they had some good men over in Hockley County that wanted to buy teams, and that the bank would handle the papers if Bill would let them have the teams. It was my understanding that the bank would take the notes from the farmers, and he had several fellows out there that day looking at the stock. * * *

"Q. Mr. Jaggers, when Mr. Green, as you testified, came out to your place here in this county, Cochran County, Texas, did Mr. Green tell you that the—

"Q. What did Mr. Green tell you, if anything, about paying for the property that you might sell to the bank's customers, or clients? * * * A. They would pay me the cash."

Other portions of the record affirmatively show that Green was with another bank, then apparently in liquidation. Obviously his purported contract did not bind appellant. If Mann, cashier of appellant bank, ever entered into the contract sued on with appellee in Cochran county, we fail to find any sufficient evidence of it in the record here. We have quoted the strongest testimony found by us connecting Mann with this matter. It was "an agreement about this property." What was such agreement? We don't know and can't find out by reading the statement of facts. A part of the contract is alleged in substance to be an agreement to release appellee on his obligation to the bank up to the amount of any note taken by the bank from its customer. Without deciding its application here, we quote, as illustrative of the strictness of the rule under discussion, the language of Judge Hickman in Hall v. First State Bank (Tex. Civ. App.) 4 S.W. (2d) 253, 257: "Were we to undertake to determine in the present state of the record the question of whether or not the letter and the renewal note completely evidence a payment and discharge of the note sued on, the case would have to be reversed and remanded anyway, because we cannot say, as a matter of law, that Hedrick, the cashier, had authority to accept the new note as payment and discharge of the old note. We may presume existence of the authority of such officer to discharge the note upon its payment in money. But it by no means follows that authority will be presumed to give such discharge by accepting something other than money in payment. First State Bank v. H. H. Lang, 55 Mont. 146, 174 P. 597, 9 A. L. R. 1139." See, also, Gustafson v. American Land Co. (Tex. Com. App.) 249 S. W. 189; 2 Tex. Jur. p. 423; 10 Tex. Jur. p. 960.

This is the second appeal of this case. See (Tex. Civ. App.) 67 S.W.(2d) 924.

The judgment of the trial court overruling appellant's plea of privilege is reversed and the cause remanded, with instructions to transfer this case to the county court of Hockley county.

Reversed and remanded, with instructions.