MR. JUSTICE MORRISON,
dissenting:
I respectfully dissent:
Both the District Court and the majority of this Court de *283 feated the claim of minority shareholders because the actions of John Hall salvaged Ski Yellowstone from the throes of financial ruin. Whether John Hall saved the “corporate bacon” is not the issue in this case.
In determining whether the “D” stock issue was proper, the majority rely upon the “business judgment” rule. The “business judgment” rule is not applicable to this case. However, this Court’s reliance upon the rule indicates that the majority simply did not understand the essence of plaintiff’s constructive fraud allegation.
The “business judgment” rule is employed to immunize corporate officers and directors where they act in good faith, but, as a matter of hindsight, it can be determined that they did not take the course of action which hindsight shows to have been the best selection. The rule simply has no application in this case. Here we must determine whether the desired corporate objective of obtaining much needed revenue could have been achieved without “watering” the stock of minority shareholders. If the revenue could have been raised without diluting their interests, then the means Hall employed constituted a “constructive fraud” within the meaning of Montana law.
John Hall decided to pay for his subscribed stock under the “C” issue through a deferred payment plan instead of paying cash as he was supposed to do under the original offering. This was justified by reliance on a two-tier budget. Hall claimed it was unnecessary to pay cash for the stock as there were not sufficient immediate cash needs of the corporation to require a cash subscription. Then, without first paying for the “C” issue, Hall caused a “D” issue. As I hereafter point out, this was a constructive fraud.
To compound the constructive fraud committed in the issuance of the “D” stock, Hall and his board of directors further diluted the interest of the minority shareholders by replacing the original five cent “D” issue with penny stock. Of course, this maneuver did not enable the corporation to raise more money, it simply gave Hall more shares of stock. *284 The corporate interest was not being further enhanced by Hall’s maneuvering; rather, the minority stockholders’ interests were being further “watered.” This again constituted a constructive fraud.
Corporate directors, in issuing additional shares of stock, owe a fiduciary duty to minority stockholders. See Condec Corporation v. Lunkenheimer Company (Del. 1967), 43 Del.Ch. 353, 230 Atl.2d 769. Where a fiduciary relationship adheres, the law of “constructive fraud” controls. Constructive fraud involves “any breach of duty which, without an actually fraudulent intent, gains an advantage to the person in fault or anyone claiming under him by misleading another to his prejudice. . .” Section 28-2-406(1), MCA. Where a fiduciary duty is involved, the trustee is bound to act in the highest good faith. Section 72-20-201, MCA. If a transaction is challenged, the burden is upon a corporate officer or a corporate director to prove that the questioned actions were fair and in good faith. First State Bank of Hilger v. Lang (1918), 55 Mont. 146, 174 Pac. 597.
It is clear from the evidence in this record that the financing technology employed by Hall benefited Hall at the expense of minority shareholders. Of course, it is no defense to argue that Hall benefited the corporation because the same corporate funds could have been realized without unnecessarily diluting the interests of minority shareholders. The majority seems to grasp at defendants’ argument that minority shareholders were offered the same price Hall paid for all stock issues. This rationale makes very bad corporate law and greatly erodes the protection previously afforded those benefiting from a fiduciary relationship. Under the law articulated in the majority opinion, minority shareholders can now be coerced into purchasing additional shares in a corporation in which they will have no voice. Further, unless the minority shareholders are willing to participate under such adverse circumstances, they will be denied standing to claim a breach of the fiduciary duty owed. If they have no money to invest in additional shares, they will *285 be totally helpless.
There is an old adage that “bad facts make bad law.” I can think of no better example than this case. The majority is rewarding John Hall for rescuing Ski Yellowstone when it was at the verge of bankruptcy. I certainly understand the equity in that position. However, in doing so, the majority has emasculated the law of constructive fraud.
In enacting the laws on constructive fraud, the legislature sought to prevent the weak from becoming prey of the strong. The statutory law of this State which sought to advance the legislature’s laudable objective gained added significance with its application in Skierka v. Skierka Brothers, Inc. (1981), Mont., 629 P.2d 214, 38 St.Rep. 754. I can only conclude from the majority decision in this case, that the law of constructive fraud as it exists in Montana will be applied' on an ad hoc basis.
I wish to point out to those who attempt to rely upon this case in the future, that it is nothing but an “aberration” in the law. Misplaced reliance on the “business judgment” rule and refusal to apply the law of constructive fraud resulted from the facts which were here at issue. John Hall saved this corporation from bankruptcy. All of the investors in this case were highly-experienced business persons. Hall carefully made all investment opportunities available to those with whom he occupied a position of trust. These factors have permitted him to prevail here, notwithstanding clear legal principles which should mandate plaintiff’s success.
I would roll back the “D” issue as a matter of law because under the undisputed evidence in the record, the issue caused a constructive fraud on minority shareholders.