STANTON, APPELLANT, *v.* OCCIDENTAL LIFE INSUR-
ANCE CO. ET AL., RESPONDENTS.

(No. 6,103.)

(Submitted June 2, 1927. Decided June 23, 1927. Resubmitted September 27, 1927. Opinion on Rehearing December 5, 1927.)

[261 Pac. 620.]

*Contracts—Specific Performance—Corporations—Directors and
Officers — Dealings With Corporation — Burden of Proof —
Ratification of Unauthorized Contract—Equity—Findings.*

Agency—Power of Agent to Compromise Debt Due to Principal—
Burden of Proof.
1.  A debtor who claims that his debt has been discharged in settlement or compromise made with the creditor's agent has the burden of proving that the agent's authority was competent for that purpose.

Corporations—Secretary Without Authority to Compromise Debt Due
to Corporation.
2.  *Held,* under the above rule, that the secretary of a life insurance company under the by-laws of which the management of its business affairs was lodged in a board of directors was without authority, in the absence of a showing of special authority conferred upon him for that purpose, to accept anything

———

2.  Secretary's implied authority to act for or bind company, see notes in Ann. Cas. 1912D, 296; Ann. Cas. 1916A, 479. See, also, 6 Cal. Jur. 1105; 7 R. C. L. 455.

but money in payment of promissory notes held by the company, or to release the maker of payment of any portion thereof or to enter into an agreement to compromise the debt.

Same—President Chargeable With Knowledge of Extent of Authority of Secretary.

3. The president of a corporation is chargeable with knowledge of the extent of the authority of its secretary and therefore may not rely upon ostensible authority in the latter to enter into a contract with him (the president) for the performance of an act in behalf of the corporation which he knew the secretary had no power to make.

Same—Ratification of Unauthorized Act of Officer by Executive Committee—When Ineffectual.

4. Ratification of an unauthorized act of the secretary of a corporation in entering into a contract in its behalf releasing its president from payment of a portion of the amount due on his promissory notes held by it, had by three of the five members of its executive committee, *held* ineffectual where one of the three voting in the affirmative was the party who would have profited by the ratification.

Same—Ratification by Retention of Benefits—Rule.

5. While a corporation which, through its proper officers or board of directors, retains the benefits of an unauthorized act of one of its agents, will be held to have ratified such act provided it does so with full knowledge of the facts, it may not be held to have ratified it if it receives and retains the benefits in ignorance of the facts and repudiates it upon acquiring knowledge of the facts.

Same.

6. Ratification by a corporation of an unauthorized act of its agent, to be available to one relying thereon, must have been by an officer or its governing body having authority to make or enter into the contract claimed to have been ratified, and the burden of proving ratification is upon the party asserting it.

Same—Officer Dealing With Corporation—Good Faith—Burden of Proof.

7. Where an officer or director has had dealings with his corporation, the burden is upon him to show that they have been fair and honest, and if it appears that he has gained an advantage over it or obtained from it something which in good conscience he should not have obtained, the transaction cannot be upheld.

Appeal—Equity—When Court may Overturn Findings.

8. The supreme court in an equity case is not bound by any finding of the trial court even though unchallenged, but under section 8805, Revised Codes of 1921, may, upon examination of the evidence, determine a question of fact for itself and overturn such finding if there is a decided preponderance of the evidence against it.

4. See 6 Cal. Jur. 1075.

5. See 1 Cal. Jur. 773, 777; 6 Cal. Jur. 1120; 21 R. C. L. 928, 932.

7. Transactions between corporation and directors, see notes in 17 Am St. Rep. 298; 139 Am. St. Rep. 599. See, also, 7 R. C. L. 480.

8. See 2 R. C. L. 203.

[81 Mont. 44.]

Corporations—Specific Performance of Contract Between President and Secretary—When Relief Denied Properly.

9.   Where plaintiff in an action for the specific performance of a contract entered into between him and the secretary of a corporation of which plaintiff was the president, whereby the latter obtained a settlement and release of his promissory note made to the corporation, for some $15,000 less than was due thereon, although the note was secured by collateral of a value several times that of the amount of the note, a finding of good faith was not warranted, and plaintiff was not entitled to prevail. (MR. JUSTICE MYERS dissenting.)

Same—Specific Performance—Denial of Relief—Placing Plaintiff in Statu Quo—When Unnecessary.

10.   Where the president of a corporation obtained an undue advantage over the corporation by reason of a contract with its secretary which the latter had no power to make and under which the former paid a large amount of money to the corporation in settlement of his indebtedness due it, which settlement it repudiated, giving him credit for the amount paid, he was not entitled to be placed in statu quo before the court could deny him specific performance; his remedy, if any, was an action on the quantum meruit.

Specific Performance—Matter of Discretion.

11.   Specific performance of a contract is not granted as a matter of abstract right, but is addressed to the sound legal discretion of the court.

---

[1, 2]   Agency, 2 C. J., sec. 670, p. 927, n. 45.   Corporations, 14a C. J., sec. 2326, p. 468, n. 70.

[3]   Corporations, 14a C. J., sec. 2212, p. 350, n. 54; sec. 2214, p. 353, n. 73.

[4]   Corporations, 14a C. J., sec. 1854, p. 92, n. 73, 75; sec. 2237, p. 380, n. 77.

[5, 6]   Corporations, 14a C. J., sec. 2234, p. 376, n. 11; sec. 2241, p. 387, n. 40, p. 390, n. 47; sec. 2251, p. 401, n. 57; sec. 2257, p. 410, n. 27.

[7]   Corporations, 14a C. J., sec. 1887, p. 119, n. 32.

[8]   Appeal and Error, 3 C. J., sec. 1485, p. 1344, n. 10; 4 C. J., sec. 2867, p. 897, n. 81; sec. 2871, p. 902, n. 4.

[9]   Corporations, 14a C. J., sec. 1888, p. 120, n. 59.

[10]   Corporations, 14a C. J., sec. 1888, p. 121, n. 61 New.

[11]   Specific Performance, 36 Cyc., p. 548, n. 41.

*Appeal from District Court, Cascade County; H. H. Ewing, Judge.*

ACTION by George H. Stanton against the Occidental Life Insurance Company of Los Angeles, California, and another. Judgment for defendants and plaintiff appeals. Affirmed.

---

11.   Discretion of court to grant specific performance, see notes in 128 Am. St. Rep. 384; 140 Am. St. Rep. 57.   See, also, 23 Cal. Jur. 418; 25 R. C. L. 202, 214.

*Mr. George H. Stanton, pro se* (Appellant), submitted an original and a reply brief, and argued the cause orally.

"Where a corporation, through its proper officers or board takes and retains the benefits of the unauthorized act or contract of an officer or agent, with full knowledge of all the material facts, it thereby ratifies and becomes bound by such act or contract." (14a C. J., p. 387.)

"Without regard to the mode of ratification an indivisible, voidable transaction cannot be ratified in part so far as it is beneficial to the corporation, and repudiated so far as it is detrimental; if it is ratified as to part, it is ratified as to the whole." (14a C. J. 374; *Mulford* v. *Torrey Explor. Co.,* 45 Colo. 81, 100 Pac. 596; *Wayne International Bldg. etc. Assn.* v. *Moats,* 149 Ind. 123, 48 N. E. 793; *Henderson* v. *Raymond Syndicate,* 183 Mass. 443, 67 N. E. 427; *Fremont Carriage Mfg. Co.* v. *Thomsen,* 65 Neb. 370, 91 N. W. 376; *Jourdan* v. *Long Island R. Co.,* 115 N. Y. 380, 22 N. E. 153; *Sheridan Electric Lt. Co.* v. *Chatham Nat. Bank,* 127 N. Y. 517, 28 N. E. 467; *Phillips* v. *Interstate Land Co.,* 176 N. C. 514, 97 S. E. 417; *Dillard* v. *Olalla Min. Co.,* 52 Or. 126, 94 Pac. 966, 96 Pac. 678; *Weschler* v. *Buffalo etc. Tract. Co.,* 51 Pa. Sup. Ct. Rep. 92; *Goldstein* v. *Union Nat. Bank,* 109 Tex. 555, 213 S. W. 584.)

"If an officer of a corporation assuming to have power to bind the corporation by a given contract, enters into the contract for the corporation and the corporation receives the fruits of the contract and retains them after acquiring knowledge of the circumstances attending the making of the contract, it will thereby become estopped from afterward rescinding or undoing the contract." (10 Cyc. 1067, 1068.) The estoppel which binds one who has been a party to a corporate transaction binds all who claim through or under him. Where the corporation has received the benefits of the contract and has thereby precluded itself from avoiding it, it cannot be avoided by one succeeding to its rights. (*Dunbar* v. *Cazort & McGehee Co.,* 96 Ark. 308, 131 S. W. 698; *Woodruff* v. *Erie*

*R. Co.,* 93 N. Y. 609; *Kadish* v. *Garden City Equitable Loan & Bldg. Assn.,* 151 Ill. 531, 42 Am. St. Rep. 256, 38 N. E. 236; *Darst* v. *Gale,* 83 Ill. 136.)

Clearly Occidental Life, as successor of State Life, is bound by the contract of October 6, upon the principle of estoppel, in addition to its obligation under the merger contract, whereby it assumed the debts, contracts and engagements of State Life, all in addition to the first principal reason herein announced.

''A director may deal or contract with the corporation where he acts in good faith and the corporation is represented by a quorum of disinterested directors. Such a contract is not void *per se* nor is it voidable, except for unfairness or fraud. Similarly an officer may deal with the corporation if his acts are open and fair and known to the directors.'' (14a C. J. 118; 10 Cyc. 307; *Tatem* v. *Eglanol Min. Co.,* 42 Mont. 475, 113 Pac. 295; *O'Rourke* v. *Grand Opera House Co.,* 47 Mont. 459, 133 Pac. 965; *Mayger* v. *St. Louis Mining Co.,* 68 Mont. 492, 219 Pac. 1102.)

*Messrs. Cooper, Stephenson & Hoover,* for Respondents, submitted a brief; *Mr. W. H. Hoover* argued the cause orally.

Plaintiff is contending that while president of the State Life Insurance Company he made an agreement with Beaty, who was the secretary and manager, that his promissory note secured by collateral, upon which he owed $58,861.24 and interest, should be settled, discharged and the collateral returned upon the payment of $41,032.00 proceeds of the sale of pledged stock, and an additional $4,254.25 or a total payment of $45,286.25, a total obligation of $60,905.03, a difference between the amount due and the amount offered in payment of $15,618.78. It is respectfully submitted that no officer of any corporation has any authority to make any such settlement, compromise or arrangement.

As secretary of the corporation, Beaty had no authority to contract. (*Farrel* v. *Gold Flint Min. Co.,* 32 Mont. 416, 80 Pac. 1027.) Speaking generally, the secretary of a corpora-

tion has no implied authority as an incident to his office, to contract for the corporation. (*Hopkins* v. *Paradise Heights F. G. Assn.,* 58 Mont. 404, 193 Pac. 389.)

The president, George H. Stanton, had no authority by virtue of his office to enter into such a contract. "Generally speaking, the president of a corporation has no implied authority, as an incident of his office, to sell its property." (*Emery Con. Min. Co.* v. *Erickson,* 64 Mont. 198, 208 Pac. 935.)

The president and cashier, acting together, have no authority to consummate an arrangement between the bank and the president with reference to the president's obligation. (*State Bank of Moore* v. *Forsyth,* 41 Mont. 264, 28 L. R. A. 501, 108 Pac. 914.) "It is elementary that an agent has no implied authority to accept payment in anything but money." (*United States Nat. Bank of Red Lodge* v. *Shupack,* 54 Mont. 542, 548, 172 Pac. 324.) Beaty had no actual authorization and he had no ostensible authority, or even if he did have ostensible authority the doctrine cannot be invoked in aid of the president of the corporation, and certainly he had not authority by virtue of his office as secretary and manager to consummate the transaction upon which plaintiff relies.

There was no ratification. "The vote of a director who is personally and directly interested in the transaction before the board is a nullity." (6 Cal. Jur., sec. 448; 3 Fletcher's Cyc. Corp., sec. 1889; 4 Id., sec. 2342; *McConnell* v. *Combination M. & M. Co.,* 30 Mont. 239, 104 Am. St. Rep. 703, 76 Pac. 194; *Willard* v. *Campbell Oil Co.,* 77 Mont. 30, 248 Pac. 221; *O'Rourke* v. *Grand Opera House,* 47 Mont. 459, 133 Pac. 965.) In order to bring this case within the rule contended for by plaintiff, he must show "that the board of directors as such" knew of and recognized the oral contract according to Stanton's version thereof, and after knowing it, accepted some benefit which it otherwise would not have received. Nothing less than such proof will avail the plaintiff. It is universally held that where the board of directors repudiates the transaction when it is first properly called to the attention

of the board, there is no ratification, regardless of whether or not theretofore benefits have been received by the corporation. (*Pennsylvania Taximeter Co.* v. *Cressy,* 191 Fed. 337, 112 C. C. A. 81; *Lyndon Milling Co.* v. *Lyndon Literary & Biblical Inst.,* 63 Vt. 581, 25 Am. St. Rep. 783, 22 Atl. 575; *Groeltz* v. *Armstrong Real Estate Co.,* 115 Iowa, 602, 89 N. W. 21; *Outcault Adv. Co.* v. *Sherman Dry Goods Co.,* 28 S. D. 307, 133 N. W. 254.)

MR. JUSTICE STARK delivered the opinion of the court.

As stated by the plaintiff and appellant in his brief filed herein: "This action was brought to enforce a contract of release and satisfaction entered into between appellant and respondent State Life Insurance Company on the 6th of October, 1924."

In order to understand the contentions of the parties, it is necessary to recite somewhat in detail the facts leading up to the contract alleged by plaintiff and which he seeks to have enforced.

The Stanton Trust & Savings Bank, a Montana corporation, was, during the time involved down to July 9, 1923, engaged in a general banking business at Great Falls in this state. The State Life Company was a corporation under the laws of this state, engaged in the life insurance business, with its principal office at Great Falls. The plaintiff owned a majority of the stock of the above-mentioned bank and was its president. He was also a large owner of shares of stock in the State Life Company and was its president. F. E. Beaty was the secretary and general manager of the State Life Company, and W. S. Hosking was its treasurer. The State Life Company kept money on deposit with the Stanton bank.

Prior to July 9, 1923, the Stanton bank, as principal, and the plaintiff, with others, as sureties, had executed and delivered to the State Life Company two bonds to secure the payment of these deposits. These bonds were required by the regulations of the insurance company and the insurance department of the state of Montana, and without them the funds of the State

Life Company could not have been carried as deposits in the Stanton bank.   On July 9, 1923, the Stanton bank closed its doors and went into voluntary liquidation.   Immediately thereafter, on the tenth day of July, 1923, at the request of Beaty, secretary and manager of the State Life Company, the plaintiff delivered to the State Life Company certain securities to secure the payment of his obligations upon the two bonds above referred to.   Amongst these securities were 1,506⅙ shares of the capital stock of the State Life Company.   The money of the State Life Company on deposit in the Stanton bank had to be counted as an admitted asset of the insurance company in order to keep its deposit with the state insurance department and its reserve fund up to the required amount.   The state insurance department having challenged the deposit and the form of the security therefor, it was agreed between the plaintiff, the executive committee of the State Life Company acting under the advice of its consulting actuary, and the state insurance department that plaintiff's obligation upon the two bonds should be put in the form of a promissory note and that the securities theretofore held as collateral to his liability on said bonds should be pledged for its payment.   On February 13, 1924, the amount of the plaintiff's liability on the bonds was ascertained to be $58,861.24, and pursuant to the arrangement above mentioned, the plaintiff on that date executed the note in question, which was thereupon deposited with the state insurance department as a part of the reserve of the State Life Company for the protection of its policy holders.   The situation of the plaintiff and the State Life Company remained in the condition above indicated down to the early part of the month of October, 1924.

According to the allegations of the complaint, about that time the defendant Occidental Life Insurance Company, a California corporation (hereafter called the Occidental Company), entered into negotiations with the plaintiff and certain other stockholders and officers of the State Life Company, the purpose of which was to effect a merger of the business and assets of the State Life Company with the Occidental Com-

pany; that to bring about this result it was necessary for the Occidental Company to acquire, by purchase, a majority of the issued and outstanding stock of the State Life Company; that this result could not be attained unless the Occidental Company could purchase the 1,506⅙ shares of stock in the State Life Company owned by plaintiff and which were pledged as security for the payment of plaintiff's note, and that to accomplish this result the defendants, on the sixth day of October, 1924, submitted to the plaintiff an offer that if he would sell or authorize the State Life Company to sell for him, to the Occidental Company at the price of $24 per share, the said 1,506⅙ shares of stock so pledged, and apply the proceeds from such sale as a payment on said promissory note, and would further sell at the same price to the Occidental Company an additional 203½ shares of said stock then owned by him and apply the proceeds from the sale of said last-mentioned stock to a further payment on said promissory note, and in addition thereto would pay to the defendants the further sum of $4,254.24, they would release him from further liability on said promissory note and return the same to him fully satisfied and discharged, and also would return to him the other collateral held as security for its payment. It is further alleged that the plaintiff unconditionally accepted this offer and that on October 8, 1924, he joined with certain other shareholders of the State Life Company in making a contract with the Occidental Company for a sale of their stock in the State Life Company to the Occidental Company at the stipulated price of $24 per share; that in pursuance of said offer and acceptance and of such agreement, the plaintiff promptly delivered to F. E. Beaty, the secretary and general manager of the State Life Company, the said 203½ shares of stock, and the same, together with the 1,506⅙ shares of hypothecated stock, were by him forwarded to the Occidental Company at its office in Los Angeles; and that about the twenty-second day of October, 1924, the State Life Company received $41,032 as the proceeds of the sale of plaintiff's shares of stock, and on the twenty-third day of October, 1924, the plaintiff, in writing, authorized

the State Life Company to apply this amount upon his note, and at the same time delivered to said State Life Company his bankable check for the sum of $4,254.24 in compliance with the terms of said agreement; that the defendants received said sums of money in full satisfaction of said note and as a complete release of plaintiff from any further liability or obligation thereon; that the plaintiff demanded of the defendants the cancellation of said note and the delivery to him of the remaining collateral described therein, but that the defendants refused to cancel or surrender said note or to deliver such collateral to him. The plaintiff asked a judgment of the court directing the cancellation and surrender of said promissory note and the immediate surrender of all the remaining collateral deposited as security for its payment.

The defendant Occidental Company filed a separate answer in which it admitted that it entered into the written contract of October 8, 1924; that pursuant thereto it had purchased more than two-thirds of the issued and outstanding capital stock of the State Life Company, but denied that it ever participated in any offer or proposal to plaintiff as set forth in the complaint, or that it ever had any agreement or understanding with the plaintiff other than the written agreement of October 8, 1924.

The defendant State Life Company by its separate answer admitted that the written contract of October 8, 1924, was entered into, and that pursuant thereto the plaintiff's shares of its capital stock were sold to the Occidental Company and the proceeds thereof applied on plaintiff's note as alleged in the complaint; admitted that the plaintiff gave it a check for $4,254.24, but denied that it ever accepted the same, but on the contrary alleged that when it learned plaintiff was attempting to offer it in payment of the balance due upon his note, it refused the offer and returned the check to him, and denied that the proceeds of the sale of said stock were ever taken or received by it in satisfaction of the note or as a release of plaintiff from his liability thereon.

As a separate defense this answer set forth the relation of the plaintiff to the State Life Company at the time of the alleged contract of October 6, 1924; that as such he was a trustee of all the property of the defendant for its benefit and particularly of the promissory note described in the complaint and the collateral by which the same was secured; that the same was one of the valuable and admitted assets of the defendant; that on October 6, 1924, the liability of the defendant on said promissory note amounted to the sum of $58,861.24, with interest at five per cent from February 13, 1924; denied that any agreement was made with the plaintiff on October 6, 1924, as alleged in the complaint, and averred that if such an agreement was made it was made between the plaintiff, personally, and himself as president, director and principal stockholder of the State Life Company, and was an attempted dealing with the corporate and trust property for the benefit of plaintiff and against the interests and to the detriment of the State Life Company, in that the result of such contract, if carried out, would be to enable plaintiff to settle his obligation on said note for a sum of more than $13,575 less than the plaintiff was legally obligated to pay and the company entitled to receive, and that if any such agreement was made, it was without any consideration running to defendant and was made under the undue influence of the plaintiff and in breach of his trust relation to the defendant, and therefore such agreement, if made, was wholly void.

Upon the issues thus framed the cause was brought on for trial; a jury was called and one question of fact submitted to it for determination. The court subsequently made findings of fact and adopted conclusions of law in favor of the defendants, upon which judgment was duly rendered and entered, and from this judgment the plaintiff appeals.

Stated in its simplest terms, it is the contention of the plaintiff that by reason of the transactions set forth in his complaint the liability on his note to the State Life Company for $58,-861.24, bearing interest at five per cent from February 13, 1924, was to be fully satisfied and discharged and the collateral

by which the same was secured returned to him by the payment to the State Life Company of the proceeds from the sale of 1,709⅔ shares of its stock at $24 per share, and an additional sum of $4,254.25. To establish this contention plaintiff testified that on Sunday, October 5, 1925, he had a meeting with F. E. Beaty, secretary of the State Life Company, R. J. Giles, general manager of the Occidental Company, and Dr. Keenan, a large stockholder of the State Life Company, at Great Falls, the object of which was to consider a proposition for the sale of the majority of the issued and outstanding stock of the State Life Company to the Occidental Company; that the parties did not then agree upon any terms for such sale; and that Giles left Great Falls for Butte, having arranged, however, that if the others should agree upon a new proposition which they desired to submit, Beaty should communicate with him at Butte the following Monday afternoon; that on Monday morning Beaty appeared at his office, stated that he and Giles had gotten together the night before and formulated a new plan for the sale of plaintiff's stock to the Occidental Company, which was in effect that plaintiff's 1,506⅙ shares of stock pledged with his note, together with his other 203½ unpledged shares, should be turned over to the State Life Company for sale to the Occidental Company at $24 per share, and the proceeds applied as a payment on his note; that if this were done, plaintiff should be credited with the further sum of $11,750 upon said note; that he then stated to Beaty that if a sale were made on such basis he would pay the balance on said note, but that there were two other conditions that must be distinctly understood: (1) That no interest should be charged on the note or the bank obligation; (2) that the officers of the State Life Company (other than Beaty and Hosking) should receive their salaries and perform their duties and services for the balance of the term for which they were elected. Continuing, the plaintiff testified: "After submitting to me that proposition from the State Life through its manager, Mr. Beaty, * * * I agreed to pay the balance that might remain due on that note." Further on he testified that "Mr. Beaty ac-

cepted the modifications that I suggested and thereupon our minds met on the agreement"; that Beaty advised him subsequent to this conversation that he had talked over the proposition with Dr. Keenan, obtained his consent thereto, and telephoned the result of the proposals to Giles at Butte. He further testified that Giles returned to Great Falls on the following day, October 7, at 9:30 P. M., and that same evening had a meeting or conference with himself and Dr. Keenan, at which Hosking and Beaty were present at least a part of the time, when it was arranged that plaintiff should prepare a contract between the Occidental Company and Keenan, Beaty, Hosking and plaintiff as stockholders of the State Life Company; that he did prepare such contract and had the same ready at about 1 o'clock P. M. of October 8, and that it was signed by the contracting parties at that time. This contract, with an addendum thereto, was introduced in evidence, and provided generally that the Occidental Company would purchase all of the issued and outstanding stock of the State Life Company at $24 per share, provided that the plaintiff and his associates who executed the same should within forty days transmit to the Occidental Company at Los Angeles at least fifty per cent and one share of the stock of the State Life Company to be delivered to the Occidental Company upon payment therefor at the specified rate. It further provided that the plaintiff, as president, and Keenan, as medical examiner, of the State Life Company, should continue to perform their official duties under the direction of the Occidental Company, and that their salaries should be paid during the term or period for which they had been elected. This agreement was duly signed by the Occidental Company and also by the plaintiff, Keenan, Beaty and Hosking, whose combined stock holdings in the State Life Company amounted to more than fifty per cent and one share of the issued and outstanding stock of the company.

The plaintiff further testified that he turned over all his stock in the State Life Company to Beaty, who forwarded the same with that of the other signers of the agreement to the

Occidental Company, which paid therefor at the stipulated price of $24 per share; that the amount received from the sale of his shares aggregated $41,032, which he directed in writing should be applied as a payment on his note; that he gave Hosking, the treasurer, a check for $4,254.25, which two sums, together with the interest deduction claimed by him and the credit of $11,750 agreed upon, fully discharged all his liability upon the note in question, but that the State Life Company refused to surrender the note or to turn over the balance of the collateral due him. Both Beaty and Giles denied that they, or either of them, ever submitted to plaintiff any such proposition as he testified to, or that any such agreement was ever made with him.

In answer to the special interrogatory submitted to it the jury found that the contract of October 6 was entered into between plaintiff and the State Life Company acting through Beaty, its secretary and general manager, as claimed by the plaintiff in his testimony above set forth. This finding was adopted by the court, but the court further found that such contract was never authorized or ratified by any legally constituted authorizing body of the State Life Company, and was therefore void. The plaintiff's principal contention is that the court erred in thus holding.

The corporate powers and the business and property of all corporations organized under the laws of this state must be exercised, conducted and controlled by a board of directors. (Sec. 5933, Rev. Codes 1921.) The by-laws of the State Life Company provided that its corporate powers were vested in a board of eleven directors, which had power, amongst other things, to manage and control the affairs and business of the corporation. The by-laws further provided for the election by the directors of an executive committee of five members ''whose duty shall be to have the general management of the business of this company and who shall superintend  *  *  *  the general transaction of the business of this company and who shall invest its funds  *  *  *  and authorize all of its contracts and shall have superintendency of the general transaction of

the company's affairs," etc.  They also provided for the election of a president who, subject to the advice of the board of directors, "shall have direction of the affairs of the corporation," and also for the election of a secretary who, in addition to certain enumerated secretarial duties, had authority "to do and perform all such acts as usually pertain to the office of manager of a corporation."

Section 6269, Revised Codes of 1921 (not changed by the [1, 2] amendment in Session Laws of 1925, Chapter 59, p. 77), provides: "No investment or loan, except policy loans, shall be made by any such life insurance company, unless the same shall first have been authorized by the board of directors, or by a committee thereof charged with the duty of supervising such investment or loan; * * * the disposition of its property shall be at all times within the control of its board of directors."

"A debtor who claims that his debt has been discharged in settlement or compromise made with the creditor's agent, has the burden of proving that the agent's authority was competent for that purpose."  (1 Mechem on Agency, p. 728.)

It was not contended that Beaty, as secretary of the State Life Company, had been specially authorized or empowered by action of the board of directors or executive committee, or other governing body of that corporation, to enter into the agreement or contract of October 6.  The note being the property of the corporation was "at all times within the control of its board of directors."  It called for payment in money.  So far as dealing with the note was concerned, Beaty as secretary of the company had only the powers of an agent, and in the absence of special authorization from the board of directors he could not accept payment therefor in anything but money, nor release the debt in whole or in part or enter into an agreement to compromise the same.  (*First State Bank* v. *Lang,* 55 Mont. 146, 9 A. L. R. 1139, 174 Pac. 597; 1 Mechem on Agency, secs. 946 and 954; *State Bank of Moore* v. *Forsyth,* 41 Mont. 249, 28 L. R. A. (n. s.) 501, 108 Pac. 914.)

Beaty did not have actual authority to enter into the contract, but some suggestion is made that the State Life Company by its conduct had clothed him with ostensible authority of sufficient scope to enable him to make the contract. "Ostensible authority is such as a principal, intentionally, or by want of ordinary care, causes or allows a third person to believe the agent to possess." (Sec. 7947, Rev. Codes 1921.) The doctrine of ostensible authority could have no application to the facts in this case, since the plaintiff was the president of the State Life Company and as such was charged with knowledge of Beaty's power and authority as secretary under the by-laws and corporate acts of the company, and therefore he could not have been led to believe that Beaty had power which he did not in fact possess by any act of the company.

"The doctrine of ostensible authority cannot be extended in favor of one who is familiar with the facts and whose dereliction is relied upon to give color to the agent's unauthorized acts." (*First State Bank* v. *Lang,* supra.)

Under the facts developed in the record we are of opinion that the trial court was correct in holding that Beaty had neither actual nor ostensible authority to agree to discharge plaintiff's obligation upon the promissory note in question for any consideration less than the full amount thereof.

But it is contended by plaintiff that the purported contract [4] between himself and the State Life Company was ratified at a meeting of the executive committee of that company held on November 19, 1924. This committee at that time consisted of the plaintiff, Keenan, Andrews, Hosking and Beaty. Considerable testimony was introduced to show just what took place at this meeting the substance of which was that plaintiff had prepared the minutes of a meeting of the executive committee which embraced a resolution reciting the transactions had between himself and Beaty on October 6, and expressly ratifying and confirming the same, declaring that plaintiff had fully performed his part of the agreement, that the promissory note had thereby been fully paid, and directing the secretary and

treasurer to return the same to him with the remaining collateral. On the afternoon of the day in question shortly before 4 o'clock, plaintiff went to the office of the State Life Company where Beaty and Hosking were at work. Upon entering the office he laid before Hosking a written notice of a call for a special meeting of the executive committee at 4 o'clock P. M. of that day. Immediately thereafter Keenan and Andrews entered the room where plaintiff and Hosking were. These four men then went to the room where Beaty was at work, and the plaintiff said: "The executive committee will now come to order." Thereupon Andrews read from the minutes which plaintiff had prepared the resolution above referred to. The plaintiff called for a vote thereon, in response to which Andrews, Keenan and plaintiff voted for its adoption; Hosking and Beaty did not vote. Plaintiff thereupon placed before Beaty a copy of the prepared minutes of the meeting and directed him to enter the same in the secretary's records. This was not done, nor was any entry made thereof in the secretary's books.

It does not seem that there is any doubt but that the resolution thus adopted was a nullity. The testimony disclosed that this note was amply secured and that the plaintiff was solvent. If the resolution passed, ratifying the transaction between himself and Beaty as a valid and binding contract on behalf of the State Life Company, he would obtain the full satisfaction and discharge of his promissory note for many thousands of dollars less than would otherwise be payable thereon. It required the affirmative vote of three members of the executive committee to adopt the resolution. One of these votes was cast by plaintiff, but he was an interested party and the effect of the resolution was adverse to the interests of the corporation; hence his vote could not be counted for the purpose of determining whether it had been adopted by a majority of those present. (*Petroleum Co.* v. *Gordon Campbell-Kevin Syndicate*, 75 Mont. 261, 242 Pac. 540; *McConnell* v. *Combination M. & M. Co.*, 30 Mont. 239, 104 Am. St. Rep. 703, 76 Pac. 194; *Jones* v. *Morrison*, 31 Minn. 140, 16 N. W. 854; *North*

*Confidence M. & D. Co.* v. *Fitch*, 58 Cal. App. 329, 208 Pac. 328; 3 Fletcher, Cyc. Corp., sec. 1889.)   In these circumstances it must be held that the action of the executive committee purporting to adopt said resolution was ineffective.

The lower court made a finding to the effect that the agreement of October 6 was never authorized by any duly constituted authority of the State Life Company, and that it was never acquiesced in by the board of directors or stockholders or any properly constituted authority of that company.   The plaintiff, however, contends that this contract was ratified by the company by the acceptance and retention of benefits thereunder.

In this connection, the lower court also made a finding to the effect that the contract of October 6 was of no substantial benefit to the State Life Company, and, when the matter was first presented to this court on appeal, that finding was approved as being sustained by the evidence, and, under this holding, it was not deemed necessary to consider any of the other matters discussed in the briefs of counsel.   However, a rehearing was granted on application of the plaintiff, for the reason that it might be considered that there was some benefit conferred upon the State Life Company under the contract of October 6.   Under this conclusion it becomes necessary to consider the contention of the plaintiff that the agreement was ratified by the State Life Company by the acceptance and retention of benefits.

The general rule upon this subject is laid down in 14a C. J., [5, 6]   page 387, as follows: "As a general rule, where a corporation, through its proper officers or board of directors, takes and retains the benefit of the unauthorized act or contract of an officer or agent, with full knowledge of all the material facts, it thereby ratifies and becomes bound by such act or contract."   And at page 390 of the same text it is said: "The general rule, of course, applies only where the corporation through its proper officers has knowledge of the facts, and not where it receives and retains the benefits of the unauthorized act or contract in ignorance of the facts, and repudiates the

act or contract when it acquires knowledge thereof; nor does the rule apply where no benefits result from the transaction, or where it receives the benefits under a separate and distinct transaction.'' (*Bangs* v. *National Macaroni Co.,* 15 App. Div. 522, 44 N. Y. Supp. 546; *Planters' Oil Co.* v. *Guaranty State Bank* (Tex. Civ. App.), 188 S. W. 38.)

Ratification must be by the officer or governing body having authority to make or enter into the contract claimed to have been ratified. (4 Fletcher, Cyc. Corp., p. 3393; *Teeple* v. *Hawkeye Gold Dredging Co.,* 137 Iowa, 206, 144 N. W. 906.)

As to the check for $4,254.25, which plaintiff contends was given in payment of the balance due on his note, the court found the fact to be: ''That the defendant, State Life Insurance Company of Montana, did not cash the said check for $4,254.25, and did not accept said check in settlement of the obligation of Stanton on his said promissory note, but refused to accept the same as not constituting a sufficient amount of money to discharge said obligation, and thereafter returned the said check to Stanton.''

In order to avail himself of the benefit of the above rule, it was incumbent upon the plaintiff to introduce evidence to bring himself within its provisions.

Now, what are the facts as disclosed by the record? When the proceeds from the sale of the plaintiff's stock, made pursuant to the contract of October 8, were received by Hosking, treasurer, he went to the plaintiff, who gave him a written order to apply such proceeds as a credit upon his note, and also gave him the check for $4,254.25, heretofore mentioned. Hosking at that time did not know anything of the alleged agreement between plaintiff and the State Life Company, made through Beaty. After receiving this order and check, Hosking immediately turned the same over to Beaty, who called the plaintiff by telephone and remonstrated with him about the amount of the check, refused to receive it as a full payment of the balance of the plaintiff's note, and a few days later returned it to him. This was about October 23. The executive

committee of the State Life Company at that time consisted
of Beaty, Hosking, Keenan, Andrews and plaintiff. The at-
tempt of plaintiff to hold a meeting of this executive com-
mittee on November 21 and his effort to secure a passage of
a resolution ratifying the agreement between himself and
Beaty, and the failure of this effort, have already been re-
ferred to. The next meeting of the executive committee was
held on April 9, 1925, and at that meeting a resolution was
adopted reciting the fact that it had come to the attention of
the board that the plaintiff was making a claim for the return
of the collateral which secured the note in question, and also
that the return of such collateral had been authorized at a
meeting of the executive committee on November 21, 1924, and
that both of such claims were without foundation in fact, and
the board repudiated the same, and amongst other things
further stated: ''And the corporation, so far as this com-
mittee can represent it, takes the position that the amount
received from sale of the stock of George H. Stanton has been
and should be applied as a credit upon said promissory note,
and that he is holden to this corporation for the full amount
of the balance, and that no officer, director, or agent has ever
been authorized to make any other or different arrangement
for the payment of said obligation, and that no action upon the
part of any officer, agent, or director of this corporation, in
attempting to or pretending to discharge said obligation, has
ever been acquiesced in or ratified by any properly consti-
tuted authority of this corporation.''

The first meeting of the board of directors of the State Life
Company after October 6, 1924, was held on April 22, 1925,
and at this meeting a resolution substantially the same as the
one adopted at the meeting of the executive committee above
recited was passed, which further stated: ''The amount re-
ceived by this corporation from the sale of the stock of George
H. Stanton has been, as it should be, applied as a credit upon
said promissory note, and that he has at all times owed, and
does now owe, the full amount of the balance.'' This is all

that the record discloses concerning the action of the corporation or any of its officers relative to the acceptance and retention of the benefits of the unauthorized act of Beaty, in entering into the agreement with plaintiff on October 6.

The burden of proving ratification of an unauthorized act is upon the party who relies upon it. (14a C. J. 401.) The above showing was not sufficient to entitle the plaintiff to the benefit of the rule above set out. When Hosking received the proceeds of the sale of plaintiff's stock, he made application of the same upon the note of plaintiff under the terms of the written order which plaintiff gave to him. As treasurer, Hosking had no authority to agree to the surrender of plaintiff's note for less than the whole amount due thereon, and in place of showing a ratification by a duly authorized governing body of the corporation it shows that the governing bodies expressly repudiated the alleged contract.

But there is another reason why the transaction between [7] plaintiff and Beaty cannot be upheld as a contract with the State Life Company, which we proceed to notice.

In 14a C. J., at page 118, it is said: "The rule obtaining in the majority of jurisdictions is that a director may deal or contract with a corporation where he acts in good faith and the corporation is represented by a quorum of disinterested directors. Such a contract is not void per se, nor is it voidable, except for unfairness or fraud." The rule has been sanctioned in this state that, when one deals with a corporation of which he is a director and gains an advantage over the corporation, or obtains from it anything which in good conscience he should not have obtained, the transaction cannot be upheld. (*O'Rourke* v. *Grand Opera House Co.*, 47 Mont. 459, 133 Pac. 965; *Mayger* v. *St. Louis Min. Co.*, 68 Mont. 492, 219 Pac. 1102.)

While the lower court made a finding to the effect that the plaintiff acted in good faith toward the State Life Company [8] in the transaction in question, and that finding is not challenged by any specific specification as not being supported

by the evidence, this is an action in equity, and under the provisions of section 8805, Revised Codes of 1921, in such an action this court is commanded "to review all questions of fact arising upon the evidence presented in the record, whether the same be presented by specifications of particulars in which the evidence is alleged to be insufficient or not, and determine the same, as well as questions of law." Under the above section, this court is bound to examine the evidence and may determine a question of fact for itself and may overturn a finding of the trial court if there is a decided preponderance of the evidence against it. (*Bordeaux* v. *Bordeaux,* 32 Mont. 159, 80 Pac. 6; *Bielenberg* v. *Eyre,* 44 Mont. 397, 120 Pac. 243.)

We think the evidence preponderates against the above [9] finding. It is but a deduction from the facts appearing in the record, which, so far as its accuracy is concerned, are not in dispute. Summarized, this evidence showed that plaintiff, president of the corporation, obtained an agreement for the settlement and release of his promissory note for a sum in excess of $15,500 less than was due and owing thereon, although the note was at that time secured by collateral having a value of about two and one-half times its amount, without paying or agreeing to pay any sum whatever which he was not obligated to pay, although at a future date, and which he had the right to pay at that time. The effect of this transaction, if carried out, would be to take more than $15,500 out of the assets of the State Life Company and transfer the same to the benefit of the plaintiff.

When it appears that an officer or director of a corporation has been dealing with the corporation, the burden is at once upon him to show that his dealings have been fair and honest. (*Hanson Sheep Co.* v. *Farmers & Traders' State Bank,* 53 Mont. 324, 163 Pac. 1151.) From the foregoing it seems clear that by this transaction the plaintiff gained an advantage over the State Life Company, which was wrong as to the

other stockholders thereof, and which in good conscience he should not have obtained.

Plaintiff makes a final contention to the effect that ⸢the [10] State Life Company should not be permitted to retain the proceeds of the sale of his stock without first having placed him in statu quo. In support of this contention he relies upon section 7567, Revised Codes of 1921, being the section which states how the rescission of a contract may be effected. This, however, is not an action for the rescission of a contract. It is an action by the plaintiff to enforce the specific performance of a contract, which the defendants assert never existed. Defendants do not seek any affirmative relief against the plaintiff. Plaintiff has not cited any authority to sustain his contention, and we have not found any.

In cases where an officer of a corporation has entered into an agreement with the corporation in breach of the duty which he owed to it, this court has not hesitated to refuse to enforce the agreement without requiring that the offending officer be placed in statu quo by being compensated for the benefits which such officer may have bestowed upon the corporation. (*McConnell* v. *Combination M. & M. Co.,* supra; *Kleinschmidt* v. *American Mining Co., Ltd.,* 49 Mont. 7, 139 Pac. 785.)

In *Gerry* v. *Bismarck Bank,* 19 Mont. 191, 47 Pac. 810, it appeared that Bannister, a director of a mining company, purchased a mining claim adjoining the company's grounds, and then fraudulently sold the same to the company at a profit, and as security for the purchase price had the company execute to the bank its note and mortgage for his benefit. The bank being about to foreclose the mortgage, stockholders of the company sought and obtained an injunction restraining it from doing so; and it was contended that the relief should not be granted without restoring to Bannister the amount which he had paid for the mining claim which he had conveyed to the company. In disposing of that contention this court said that Bannister, having gained an advantage wrong from its inception, was in no position to make such a demand.

Although the circumstances in the instant case are not so extreme as those in the case last cited, the principle there announced is equally applicable here, viz.: The plaintiff, having gained an advantage over the State Life Company by the transaction of October 6, 1924, which was wrong and which in good conscience he should not have obtained, is not in a position to demand that he be placed in statu quo before the court shall decline to afford him the relief which he seeks in this case. Plaintiff's remedy is an action on the quantum meruit.

[11]    Specific performance of a contract is not granted as a matter of abstract right, but in every instance is addressed to the sound legal discretion of the court. (*Wolf* v. *Great Falls Water P. Co.,* 15 Mont. 49, 38 Pac. 115; *Interior Securities Co.* v. *Campbell,* 55 Mont. 459, 178 Pac. 582; *Babcock* v. *Engel,* 58 Mont. 597, 194 Pac. 137; *Wilburn* v. *Wagner,* 59 Mont. 386, 196 Pac. 978.)

After an examination of the record in the case and a consideration of the various contentions of the plaintiff, it is our conclusion that the lower court did not err in entering the judgment which it did.

The judgment is affirmed.

*Affirmed.*


MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES MATTHEWS and GALEN concur.


MR. JUSTICE MYERS:

I concur in the result announced in the opinion of the majority, but not in all of the reasoning therein, nor all of the conclusions thereof, nor all that is said therein.

I accept the findings of the trial court that the contract of October 6, 1924, alleged by plaintiff, was entered into between plaintiff, for himself, individually, and Beaty, professedly for the State Life Company, and that plaintiff, in so doing, acted in good faith, and also its further finding that

such contract was never authorized or ratified by any legally constituted authorizing body of the State Life Company; and I concur in the conclusion of the trial court, based on such findings, and the conclusion announced in the majority opinion that, on account thereof, such attempted contract was void.

I do not concur in but dissent from that portion of the majority opinion which says that because of the attempted contract, as agreed to by plaintiff and Beaty,° plaintiff gained an advantage over the State Life Company, which was wrong, and which, in good conscience, he should not have obtained. I do not think the case of *Gerry* v. *Bismarck Bank,* 19 Mont. 191, 47 Pac. 810, cited in the majority opinion, is applicable to the facts in the case at bar, or that plaintiff should be judged by it. Plaintiff, in the case at bar, acted as an individual, as he had a right to do; he acted in a manner open and above board. Had there been a lawful ratification by the State Life Company, no wrong, harm or undue advantage would have resulted. I do not see that any was attempted.

I concur in the result solely on the ground that Beaty was not authorized to contract for the State Life Company, with plaintiff, and that his attempted contract was not ratified.